[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 3, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13796

_____

D. C. Docket No. 05-00089-CR-ODE-4-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LASHOVIA GRIER, a.k.a. Lashovia Corvette Grier,
PERTHENIA JORDAN,
a.k.a. Perthenia Renee Jordan,
a.k.a. Perthenia Renne Jordan,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(August 3, 2007)**

Before PRYOR, KRAVITCH and ALARCÓN,[*] Circuit Judges.

_____

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

ALARCÓN, Circuit Judge:

Perthenia Jordan has appealed from the judgment of conviction for conspiracy to obtain money by defrauding several banks in violation of 18 U.S.C. § 1349, and seven counts of bank fraud in violation of 18 U.S.C. §§ 1344 and 2. She contends that the District Court violated her Sixth Amendment right to counsel. She also maintains that it erred in concluding that the evidence was sufficient to support her conviction for conspiracy to commit bank fraud and bank fraud, in denying her motion for a mistrial, in admitting evidence of extrinsic acts contrary to Rule 404(b) of the Federal Rules of Evidence, and in enhancing her sentence because of her role as a supervisor. She also argues that the District Court erred in concluding that the Sentencing Guidelines are mandatory.

In her notice of appeal, Lashovia Grier asserted that she was appealing "from the Sentence only." In her opening brief, however, Ms. Grier has challenged the sufficiency of the evidence to support her conviction for conspiracy to commit bank fraud and bank fraud, and the District Court's admission of extrinsic evidence. She did not claim that the District Court erred in its sentencing decision.

We affirm because we conclude that the District Court did not violate Perthenia Jordan's Sixth Amendment right to counsel of her choice. We also hold that the evidence was sufficient to persuade a trier of fact that each of the

Appellants was guilty beyond a reasonable doubt. In addition, we are persuaded that the District Court did not abuse its discretion in its evidentiary rulings, and that its application of the Sentencing Guidelines was not unreasonable.

**I**

**A**

The evidence, viewed in the light most favorable to the Government as the prevailing party, demonstrates that from August 1, 2001 to October 25, 2004, Perthenia Jordan conspired with Lashovia Grier, Cynthia Starr and others to defraud Wachovia Bank, Washington Mutual Bank, the Georgia Telco Credit Union, and the Atlanta Postal Credit Union of their money. The conspirators deposited counterfeit and stolen checks, as well as checks drawn on closed accounts, into accounts opened at these financial institutions and then withdrew funds from these accounts.

Three co-conspirators testified at trial that under the direction of Perthenia Jordan they defrauded the four financial institutions named in the indictment. Debbie Jordan, Perthenia Jordan's cousin, testified that Perthenia Jordan instructed her to open an account, obtain a debit card, and deposit checks in the account that Perthenia Jordan would furnish. Debbie Jordan was directed to buy postal money orders using a debit card for the account. Perthenia Jordan explained to Debbie

3

Jordan that once the fraud was discovered, she should file a police report falsely claiming that her identification and debit card had been stolen.

Following Perthenia Jordan's instructions, Debbie Jordan opened an account at Wachovia Bank. She gave the debit card for the bank account to Perthenia Jordan. After counterfeit checks were deposited into the account, money orders were purchased with the debit card. Perthenia Jordan paid Debbie Jordan $1,500 for her participation in this scheme.

Takeyla Hollie, Debbie Jordan's sister-in-law, testified that she was told by Debbie Jordan that if she wanted to make money, she should contact Perthenia Jordan. Debbie Jordan drove Ms. Hollie to Perthenia Jordan's residence. Perthenia Jordan told Ms. Hollie that she would be paid to allow fraudulent checks to be deposited in her checking account. She instructed Ms. Hollie that she should withdraw funds after the fraudulent checks were deposited. She was also told to report to the police that her debit card and personal identification number had been stolen as soon as she withdrew the funds in the checking account.

Perthenia Jordan introduced Ms. Hollie to Lashovia Grier and provided Ms. Hollie with forged payroll checks. She instructed Ms. Hollie to take Ms. Grier to Columbus, Georgia to cash the checks. Ms. Hollie did so six times a month. Ms. Hollie and Ms. Grier were not employed at the firms on whose accounts the checks

4

were drawn. Perthenia Jordan paid Ms. Hollie and Ms. Grier $200 for each counterfeit check they cashed.

Perthenia Jordan also recruited Justin Johnson to open checking accounts. Mr. Johnson agreed to work for Perthenia Jordan and he asked her for counterfeit identification. She instructed him to obtain a passport photograph. After he did so, she gave him a Georgia driver's license in the name of Orondo Johnson.

Mr. Johnson opened an account at the Washington Mutual Bank. Perthenia Jordan gave him a check for $4,800 and another in the amount of $3,650 to deposit in the account. He was instructed to use the debit card to make cash withdrawals at ATMs, and to purchase postal money orders. He did so and split the proceeds with Perthenia Jordan.

Perthenia Jordan drove Mr. Johnson and Artis Williams to Macon, Georgia to cash counterfeit checks. Mr. Johnson and Mr. Williams were arrested when they attempted to cash those checks. Perthenia Jordan remained in the car while Mr. Johnson and Mr. Williams entered the bank. A Macon Police Department officer encountered Perthenia Jordan outside the bank.

The Government presented the following evidence regarding the substantive offenses charged in Counts Two, Three, Four, Five, Six, Nine and Ten. On April 24, 2001, Perthenia Jordan opened an account at the Wachovia Bank in the name

of "Your Best Friend Cleaning Service." She requested that a debit ATM card be issued for the account. On August 13, 2001, the balance in the account was $1.17. Two days later a check for $24,000, drawn on an account held by Honda and Suzuki of Rome, was deposited into her account at an ATM. The next day $300 was withdrawn from the account. Thereafter, the debit card was used to purchase postal money orders. A few days later a check for $12,000, drawn on the same Honda and Suzuki account, was deposited into Perthenia Jordan's account. Both of the Honda and Suzuki checks were fraudulent. After the second deposit, more withdrawals from ATMs occurred, and debit card purchases of money orders were made.

The Wachovia Bank's surveillance camera photographed the deposit of the $24,000 check purportedly drawn on the Honda and Suzuki of Rome account. Debbie Jordan identified the person depicted in the surveillance photographs as Kenyatta Bostic. Debbie Jordan testified that Ms. Bostic was acquainted with Perthenia Jordan. On September 7, 2001, Perthenia Jordan reported to the police that her "work pouch [was] lost with: wallet containing SS cards (4), checkcard, checkbook, VISA credit card, birth certificate, work ID and BellSouth cell phone."

The Government presented the following evidence in support of Counts Three, Four, and Five. On November 19, 2001, Perthenia Jordan drove Debbie

6

Jordan and another person to the Atlanta Postal Credit Union to open accounts. Accounts were opened in the name of Perthenia Jordan, Debbie Jordan, and Marcia Johnson. On the same date, an account was opened at the Wachovia Bank in the name of Ms. Johnson.

In December 2001, Perthenia Jordan gave Debbie Jordan a fraudulent check and requested that she deposit it at the Atlanta Postal Credit Union. The next day, Perthenia Jordan took Debbie Jordan to two different banks. Perthenia Jordan told her to purchase a cashier's check at each bank using her debit card. After these purchases, Perthenia Jordan drove Debbie Jordan to two branches of the Sun Trust Bank to cash the cashier's checks. Debbie Johnson was paid approximately $1,800 for these transactions.

On December 12, 2001, a counterfeit check was deposited into the Marcia Johnson account at the Atlanta Postal Credit Union. A $500 withdrawal was made from the account.

The record pertaining to the allegations in Count Six shows that an account in the name of Quartarrio Hill was opened at the Wachovia Bank in the same way described above, i.e., a minimal deposit made to open the Quartarrio Hill account. On April 25, 2002, a check drawn on a closed account was deposited into the account at an ATM. At trial, Debbie Jordan and Ms. Hollie identified Perthenia

Jordan as the person depicted in the ATM surveillance photograph at the time this fraudulent deposit was made.

Justin Johnson's testimony set forth above demonstrated that Perthenia Jordan participated in defrauding the Washington Mutual Bank, as alleged in Count Nine. The record also shows that one of the money orders purchased with the Orondo Johnson account debit card had Perthenia Jordan's fingerprints on it.

In Count Ten, the superseding indictment alleges that Ms. Grier, Perthenia Jordan, and Ms. Starr aided and abetted each other in defrauding the Georgia Telco Credit Union. Lynnisha Jeffries opened a checking account at the Georgia Telco Credit Union on August 6, 2004. A debit card was issued for the account. On September 11, 2004, debit card transactions put the accounts in a negative balance. On September 14, 2004, deposits were made into the account. Ms. Hollie identified Ms. Grier as the person who made these deposits. On September 15, 2004, a counterfeit check was deposited into the account. On September 21, 2004, and September 22, 2004, cash withdrawals were made at ATMs. Ms. Hollie identified Ms. Grier as the person depicted in the surveillance photographs making the debit card withdrawals. Her finger prints were on four of the money orders purchased with the debit card issued on the Jeffries account. Three of the money orders were made payable to Ms. Grier. Perthenia Jordan's right thumb print was

8

on one of the money orders.

After the Government rested its case-in-chief, Perthenia Jordan and Ms. Grier each moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The District Court denied the motions.

**B**

Perthenia Jordan and Ms. Grier did not testify on their own behalf. Perthenia Jordan presented four witnesses. Laytika Jordan, Perthenia Jordan's cousin, testified that she "would not" believe Debbie Jordan's testimony under oath. She testified that Debbie Jordan had a reputation in the community for "[n]ot telling the truth." She also testified that she and Debbie Jordan "did marijuana . . . [and] crack cocaine" together. Jeffery Jordan, Debbie Jordan's husband, was separated from his wife at the time of trial. He testified that Debbie Jordan's testimony should not be believed because "[s]he's a liar." He further testified that he also would not believe Ms. Hollie's testimony under oath because "[s]he's a liar." Otis Jordan, Perthenia Jordan's father, testified that during the first part of July 2001, her grandmother was hospitalized which caused his daughter to appear to be distraught. Johnnie Herrington testified that he worked for Perthenia Jordan's company between 2001 and 2002. His job involved cleaning libraries and police stations. He generally worked a few hours a night and three to four nights a

week.  Perthenia Jordan paid Mr. Herrington $150, in cash, every two weeks.

Ms. Grier called Inspector Carmen Reese of the United States Postal Service as a defense witness pursuant to Rule 611(c) of the Federal Rules of Evidence.  Inspector Reese testified that no handwriting exemplar was taken from Ms. Grier.

The jury found Perthenia Jordan guilty of Counts One, Two, Three, Four, Five, Six, Nine and Ten.  Ms. Grier was found guilty as charged in Count One and Count Ten[1].

## C

A probation officer prepared a Presentence Investigation Report ("PSR") for each defendant.  The PSR recommended a four-level enhancement for Perthenia Jordan's leadership role in the offense.  The resulting total adjusted offense level was 23.  Her criminal history category was I.  These calculations resulted in a Sentencing Guidelines range of 46 to 57 months of imprisonment.

During the sentencing proceedings, Perthenia Jordan asserted that the PSR's proposed enhancement for a leadership role was not supported by the evidence.  She also contended that she was entitled to an adjustment for acceptance of

---

[1]The grand jury returned a superseding indictment on October 26, 2006.  It charged Perthenia Jordan with conspiracy to commit bank fraud in Count One, and bank fraud in Count Two through Ten.  Ms. Grier was charged as a co-defendant in Count One and Count Ten.  At the Government's request, the District Court dismissed Count Seven and Count Eight.

responsibility.  The District Court rejected each of these contentions.

The District Court sentenced Perthenia Jordan to serve fifty-two months of imprisonment.  This sentence was within the Sentencing Guidelines range.  The District Court also ordered restitution in the amount of $119,832.51.  Ms. Grier has not raised any issue concerning her sentence.

## II

### A

Perthenia Jordan and Ms. Grier have filed timely notices of appeal.  We have appellate jurisdiction over Perthenia Jordan's appeal from the judgment of conviction pursuant to 28 U.S.C. § 1291, and we are empowered by 18 U.S.C. § 3742(a)(1)-(2) to review her claim that the District Court erred in its sentencing decision.

In her notice of appeal, Ms. Grier did not appeal from the final judgment of conviction under 28 U.S.C. § 1291.  Instead, she stated that "Defendant above-named, hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the Sentencing only (18 U.S.C. § 3742) (Sentence imposed 18 months) entered in this proceeding on the 28th day of June, 2006."  In the opening brief she filed in this Court, however, she did not challenge the District Court's sentencing decision.  The two issues raised in her brief deal with alleged errors

11

relating solely to the judgment of conviction.

To resolve this jurisdictional paradox, this Court directed the parties to file letter briefs addressing the question whether "this Court has jurisdiction over the appeal of Lashovia Grier in light of her Notice of Appeal dated June 28, 2006, which references only her sentence, and the arguments made in her opening brief on appeal, which do not reference her sentence."

In a commendable response to this Court's question, the Government stated that under this Circuit's precedent "the Court should find that Grier's notice of appeal of her sentence is sufficient to confer jurisdiction on the Court to consider the enumerations of trial error raised in Grier's opening brief."

The Government first notes that Ms. Grier stated in her notice of appeal that "a transcript of all pretrial, trial, and sentencing proceedings is required to prosecute this appeal." The Government reasons that "Grier demonstrated her intention to appeal her conviction by stating in her notice of appeal that all pretrial and trial transcripts were necessary to prosecute her appeal, by ordering the trial transcript and by raising trial error in her opening brief."

In its brief, the Government responded to each of the issues raised in Ms. Grier's opening brief. It conceded that it would not be prejudiced if this Court reviews the merits of the issues raised in Ms. Grier's opening brief.

Ms. Grier's counsel also maintains that under this Circuit's precedent, we have jurisdiction over this appeal. We agree. In *Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373 (5th Cir. 1979), the Court rejected the appellees' contention that the appellants could not raise an issue on appeal because the notice of appeal did not specify the district court's order relating to the question presented in the opening brief. *Id*. at 1390 n.15. The Court held that it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Id*. The Court also noted that the appellees could show no prejudice because "[b]oth sides also briefed the issue before this court." *Id*.[2] In *C. A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049 (5th Cir. 1981), the Court stated: "The party who makes a simple mistake in designating the judgment appealed from does not forfeit his right of appeal where the intent to pursue it is clear." *Id*. at 1056.

In *United States v. Rothseiden*, 680 F.2d 96 (11th Cir. 1982), this Court held that where the notice of appeal does not mislead or cause prejudice, it would overlook any failure to designate properly the order appealed. *Id*. at 97.

In a more recent case with strikingly similar facts, the Fifth Circuit held that

---

[2] In *Bonner v. City of Prichard, ALA.*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

13

a notice of appeal that stated that the appeal was from the "sentence entered in this matter" was sufficient to allow the defendant to appeal both his conviction and sentence where the defendant demonstrated an intent to appeal his conviction in his brief, and the Government was not misled or prejudiced by the notice of appeal. *United States v. Knowles*, 29 F.3d 947, 948-50 (5th Cir. 1994).

Because of the Government's forthright concession that it has not been prejudiced by the misleading notice of appeal, we are persuaded that we have jurisdiction over Ms. Grier's appeal.

**B**

Perthenia Jordan contends that she was deprived of her Sixth Amendment right to be represented by counsel of her choice. She argues that under the Supreme Court's decision in *United States v. Gonzales-Lopez*, 126 S. Ct. 2557 (2006), we must reverse.

The facts on which Perthenia Jordan bases her Sixth Amendment claim are that, in an ex parte conference in chambers on the morning set for trial, she requested permission from the District Court to allow her "to hire another attorney with Mr. Citronberg to proceed with my case." The District Court denied her request to hire another attorney because it would take him or her "weeks and most often months to get a case ready for trial."

14

The issue presented in *Gonzalez-Lopez* is readily distinguishable from the question we must decide in this matter. In *Gonzalez-Lopez*, the defendant, in a criminal matter filed in the Eastern District of Missouri, retained a California lawyer to represent him. 126 S. Ct. at 2560. His retained counsel filed an application for admission *pro hac vic*e. *Id.* The District Court denied the application without comment. *Id.* *Gonzalez-Lopez* then retained local counsel and the case proceeded to trial. *Id.* *Gonzalez-Lopez* appealed from his conviction. *Id.* at 2561. The Eighth Circuit vacated the conviction, holding that the District Court had violated the defendant's right to paid counsel of his choosing. *United States v. Gonzalez-Lopez*, 399 F.3d 924, 926 (8th Cir. 2005). It also held that this violation was not subject to harmless-error review. *Id.* at 932-35. The Supreme Court affirmed the judgment of the Court of Appeals. 126 S. Ct. at 2566. It held:

> We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar. The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. None of these limitations on the right to choose one's counsel is relevant here. This is not a case about a court's power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel. However broad a court's discretion may be, the Government has conceded that the

15

District Court here erred when it denied respondent his choice of counsel. Accepting that premise, we hold that the error violated respondent's Sixth Amendment right to counsel of choice and that this violation is not subject to harmless-error analysis.

*Id.* at 2565-66 (internal citations and quotation marks omitted).

The Supreme Court instructed in *Morris v. Slappy*, 461 U.S. 1 (1983), that

Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Id*. at 11-12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

Here, the District Court denied the motion to permit Perthenia Jordan to hire additional counsel because it would inconvenience the prospective jurors who had been summoned to the courtroom. The District court also noted that the Government and the co-defendant were ready to proceed with the trial on that day. We conclude that the District Court did not err in denying the request to appoint additional counsel because it would have required a continuance to permit such counsel to prepare for trial. Perthenia Jordan was represented at trial by the counsel she had initially selected. The denial of her untimely request to retain

16

additional counsel did not deprive her of the protection provided by the Sixth Amendment because granting it would have disrupted the District Court's calendar.

## C

Perthenia Jordan and Ms. Grier contend that the evidence was insufficient to convict them of conspiracy to defraud financial institutions or of fraud in obtaining money orders from them.

"Whether the record contains sufficient evidence to support the jury's verdict is a question of law subject to *de novo* review." *United States v. To*, 144 F.3d 737, 743 (11th Cir. 1998). "When conducting the review of the record, [this Court] view[s] the evidence in the light most favorable to the government and resolve[s] all reasonable inferences and credibility evaluations in favor of the jury's verdict." *Id.* (internal quotation marks omitted). "[T]he jury's verdict [should be upheld] whenever a reasonable factfinder could conclude that the evidence establishes guilt beyond a reasonable doubt." *Id.* at 743-44.

In this case, the jury was presented with direct evidence of Perthenia Jordan's involvement in the bank fraud conspiracy charged in Count One, and the substantive bank fraud offenses charged in counts Two through Six and Nine and Ten through the testimony of cooperating co-conspirators Debbie Jordan, Mr.

17

Johnson, and Ms. Hollie. The Government also presented bank surveillance photographs showing Perthenia Jordan depositing a counterfeit check, and money orders purchased with fraudulently obtained funds containing her fingerprints.

The record also shows that Ms. Grier was involved in the bank fraud conspiracy charged in Count One and the substantive bank fraud offense charged in Count Ten. The Government introduced into evidence surveillance photographs showing Ms. Grier making fraudulent deposits into an account that was used by Perthenia Jordan to perpetrate bank fraud, and money orders purchased with fraudulently obtained funds containing Ms. Grier's fingerprints.

Perthenia Jordan and Ms. Grier contend that the Government failed to show that an agreement existed between the co-conspirators to form the alleged conspiracy. This Court has held that the Government could prove a conspiracy by "show[ing] an agreement on an overall objective." *To*, 144 F.3d at 744. However, "the government does not have to establish that each conspirator explicitly agreed with every other conspirator to commit the substantive [] crime described in the indictment, or knew his fellow conspirators, or was aware of all the details of the conspiracy." *Id.* Here, testimony from the defendants' co-conspirators clearly satisfies the Government's burden of proof on this issue.

Ms. Grier cites *Kotteakos v. United States*, 328 U.S. 750 (1946), and its

18

progeny to suggest that this was a "hub and spoke" conspiracy, thus she should not be charged with conspiring with the other spokes. This Court has held that when "there was no connection whatsoever between the various spokes [co-conspirators] of [the] scheme," the entire scheme could not be charged as a single conspiracy. *United States v. Chandler,* 388 F.3d 796, 808 (11th Cir. 2004). Here, however, the evidence shows that Ms. Grier and Perthenia Jordan entered in an agreement with other persons to defraud financial institutions.

## D

Perthenia Jordan also contends that the District Court erred by failing to grant her motion for a mistrial after Mr. Johnson testified that he saw Perthenia Jordan in custody at the bank after he and Mr. Williams were arrested in Macon. "The district court's evidentiary rulings are not subject to disturbance on appeal absent a clear abuse of discretion." *United States v. Mendez*, 117 F.3d 480, 484 (11th Cir. 1997) (internal quotation marks omitted). "Moreover, [t]he decision to grant a mistrial lies within the sound discretion of the trial judge since he [or she] is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *Id.* (alteration in original) (internal quotation marks omitted). "When a court gives a direct and explicit curative instruction regarding improper testimony, it supports the court's decision not to grant a mistrial by decreasing the

19

possibility of undue prejudice." *United States v. Perez*, 30 F.3d 1407, 1411 (11th Cir. 1994). Finally, "prejudicial testimony will not mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact on the verdict of the jury." *United States v. Saget*, 991 F.2d 702, 708 (11th Cir. 1993) (internal quotation marks omitted).

Immediately following Mr. Johnson's challenged testimony, the District Court struck it from the record and gave an explicit curative instruction. The Court informed the jury that Perthenia Jordan being in custody in Macon was "not relevant" and "direct[ed] [the jury] to disregard that." The Court further indicated to the jury that "there is no evidence that [Perthenia Jordan] was convicted of anything relating to the Macon situation," and that "the charge was dismissed in Macon." These admonitions went beyond a standard curative instruction. By informing the jury of the dismissal of the charges at Macon, the District Court erased any possible undue prejudice that may have occurred. The District Court did not err by refusing to grant Perthenia Jordan's motion for a mistrial.

## E

Perthenia Jordan and Ms. Grier both contend that the District Court erred in permitting Ms. Hollie to testify about their involvement in other crimes not

charged in the indictment. They argue that the Government violated the Magistrate Judge's order requiring pretrial disclosure of such testimony to be completed twenty-one days prior to trial. "This court reviews the decision to admit extrinsic act evidence under Fed. R. Evid. 404(b) for clear abuse of discretion." *United States v. Paradies*, 98 F.3d 1266, 1291 (11th Cir. 1996) (internal quotation marks omitted).

Rule 404(b) of the Federal Rules of Evidence provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

In *United States v. Miller*, 959 F.2d 1535 (11th Cir. 1992), this Court concluded that a three-part test should be used to evaluate the admissibility of Rule 404(b) evidence. *Id*. at 1538. "First, the evidence must be relevant to an issue other than the defendant's character." *Id*. "Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act." *Id*. "Third, the evidence must possess probative

21

value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403." *Id.* Whether the probative value is not substantially outweighed by undue prejudice is a "determination [that] lies within the discretion of the district court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Perez*, 443 F.3d 772, 780 (11th Cir. 2006) (internal citation and quotation marks omitted).

Ms. Hollie testified regarding Perthenia Jordan's and Ms. Grier's prior involvement in intentionally defrauding other banks. The prior crimes in question were very similar to the bank fraud scheme involved in this case. Since Perthenia Jordan and Ms. Grier pled not guilty to the bank fraud charges at issue, proof of similar prior crimes was relevant to show that Perthenia Jordan and Ms. Grier intentionally participated in defrauding the banks named in the superseding indictment. *See United States v. Matthews*, 431 F.3d 1296, 1311-12 (11th Cir. 2005) (similar crime committed eight years prior could be introduced at trial to show intent to commit the current charged crime). Ms. Hollie, as a co-conspirator, offered first-hand accounts of the prior crimes, thus providing sufficient proof that Perthenia Jordan and Ms. Grier committed the extrinsic acts.

22

The balancing test further supports the District Court's conclusion. As discussed above, the intent element of the bank fraud charges for each defendant was contested at trial. Thus, evidence of the other crimes was admissible to prove the intent element beyond a reasonable doubt. Additionally, the prior crimes are factually similar to the charged offenses, and they are not temporally remote as the time span difference is only a matter of a few years. Finally, the District Court gave a limiting instruction informing the jury that the evidence of other crimes could only be considered for a "limited purpose," and that those crimes "are not themselves charged as crimes in the indictment." Thus, the totality of the circumstances suggests that the District Court was well within its discretion in permitting such prior crimes testimony.

Perthenia Jordan and Ms. Grier further maintain that the Government's violation of the Magistrate Judge's twenty-one-day rule constitutes reversible error. As the District Court properly held, however, Appellants failed to demonstrate that they were prejudiced as a result of the Government's disclosure of Ms. Hollie's testimony seven days prior to trial. The District Court did not abuse its discretion in permitting Ms. Hollie to testify about Perthenia Jordan's and Ms. Grier's involvement in other crimes not charged in the indictment.

**III**

23

**A**

Perthenia Jordan next argues that the District Court erred by enhancing her sentence based on a leadership role because there was no evidence that she managed others or that she supervised at least five people. "A district court's upward adjustment of a defendant's Guidelines offense level due to his status as a leader or organizer under U.S.S.G. § 3B1.1 is a finding of fact reviewed only for clear error." *United States v. Phillips*, 287 F.3d 1053, 1055 (11th Cir. 2002). "The government bears the burden of proving by a preponderance of the evidence that the defendant had [such] an aggravating role in the offense." *United States v. Yeager*, 331 F.3d 1216, 1226 (11th Cir. 2003).

The Sentencing Guidelines provide for a four-level increase in the Guidelines range if the defendant "was an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). In making the aggravating-role determination, the District Court should consider several factors, including "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, Application

24

Note 4.  Section 3B1.1 defines a participant to be "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, Application Note 1.  An enhancement under 3B1.1 "requires the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership." *United States v. Yates*, 990 F.2d 1179, 1182 (11th Cir. 1993).

Here, the evidence established that Perthenia Jordan recruited and supervised at least five people.  The testimony at trial and the PSR identified twelve people involved in the scheme that lasted over three years.[3]  Perthenia Jordan obtained counterfeit checks on closed accounts and directed others to deposit them in checking accounts, and to withdraw funds or purchase money orders.  She kept a portion of the money obtained by her recruits.  As the District Court noted, the group would not have existed without Perthenia Jordan's organizing skills.  Accordingly, the District Court's application of the enhancement was not clear error.

**B**

Perthenia Jordan argues that the District Court erred by refusing to apply a

---

[3]Perthenia Jordan's co-conspirators identified at trial and in the PSR of Perthenia Jordan and the PSR of Lashovia Grier include Justin Johnson, Alecia Gillins, Debbie Jordan, Vernon Thorne, Corlis Gail Smith, John Smith, Latyka Jordan, Takeyla Davis, Lashovia Grier, Carl Johnson, and Cynthia Starr.

reduction for acceptance of responsibility because, even though she proceeded to trial, she provided a statement of remorse and apologized. "We review the district court's determination of acceptance of responsibility only for clear error." *United States v. Singh*, 291 F.3d 756, 764 (11th Cir. 2002) (internal quotation marks omitted). "A district court's determination that a defendant is not entitled to acceptance of responsibility will not be set aside unless the facts in the record clearly establish that a defendant has accepted personal responsibility." *Id.*

Under U.S.S.G. § 3E1.1(a), a defendant may receive a two-level reduction in his offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Application Note 2 to § 3E1.1 explains that

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

Perthenia Jordan made the following brief written statement to the probation officer: "This advises that I am remorseful for the events that led to my conviction. I apologize to the Court, to the Government, and to my family." During the sentencing proceedings, she again apologized to the Court, the Government, and her family for "everything that . . . led up to [her] conviction." The District Court concluded that Perthenia Jordan had not affirmatively accepted responsibility. The Court explained that "with respect to acceptance of responsibility, under the Guidelines there must be some affirmative indication in the evidence of acceptance of responsibility. And that simply does not exist in this case."

The District Court did not clearly err in this decision. Perthenia Jordan went to trial to contest her guilt and not to preserve a challenge to the statute or the applicability of the statute to her conduct. Rather, she only made a statement of remorse after her conviction and only apologized for the "events that led to" the conviction. Because she went to trial on issues relating to her factual guilt, she failed to "clearly demonstrate[] acceptance of responsibility."

## C

Finally, Perthenia Jordan argues that the District Court improperly applied the Guidelines in a mandatory fashion by stating, during her sentencing proceeding, that: "So I think the court is required to impose a prison sentence and

27

I think it has to be a guideline sentence because of the evidence that came in at trial." When a defendant fails to object to an error before the District Court, this Court reviews the argument for plain error. *United States v. Hall*, 314 F.3d 565, 566 (11th Cir. 2002). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id*.

Perthenia Jordan did not object to the imposition of her sentence under a mandatory Sentencing Guidelines scheme. Thus, we review Perthenia Jordan's contention that the District Court improperly applied the Guidelines in a mandatory fashion for plain error.

In *United States v. Dowd*, 451 F.3d 1244 (11th Cir. 2006), this Court held that the "district court, in determining a reasonable sentence, must consider the correctly calculated sentencing range under the advisory guidelines and the factors set forth in 18 U.S.C. § 3553(a)." *Id.* at 1256. "[N]othing in *Booker* or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005).

Here, the District Court did not err because it did not impose a sentence

28

under a mandatory Guidelines scheme.  During sentencing, the District Court correctly indicated that "of course, we all know that the Guidelines are no longer binding in Federal Court."  The Court further indicated that "the Court is required in this Circuit . . . to determine the Guideline range as a beginning point for the analysis."  The Court also noted that in determining a "reasonable sentence," it would "take into account all of the [submitted] evidence . . . and . . . presentation made by counsel."  The Court ultimately concluded that facts of the case made a sentence within the Guidelines range appropriate and necessary.

**AFFIRMED.**